UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR ANTHONY RODRIGUEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:20-cv-00055-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.**　　**Introduction**

Plaintiff Arthur Anthony Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 20, 21. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.**　　**Procedural Background**

On December 15, 2016 Plaintiff filed an application for supplemental security income claiming disability due to diabetes, liver disease, depression and lower back pain. AR 398. The Commissioner denied the application initially on March 17, 2017, and on reconsideration on April 27, 2017. AR 190–203; 204–216.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on October 25, 2018. AR 111–146. On December 28, 2018 the ALJ issued a decision

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 8.

denying Plaintiff's application. AR 10–37. The Appeals Council denied review on November 18, 2019. AR 1–6. On January 10, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III.     Factual Background

#### A.      Plaintiff's Testimony

Plaintiff lived with his mother. AR 117. Plaintiff's weight fluctuated from 140 to 175 pounds. He lost a lot of weight when he got sick but gained it back. AR 118–19. He had prior experience cleaning buses, washing dishes, doing warehouse work, moving furniture weighing more than 50 pounds, and working as a bike technician. AR 119–25. He had been experiencing memory loss for a while. AR 125. He completed the 12th grade. AR 125. He had not worked since 2013. AR 126. He continued looking for work for temporary services but could not find any placements. AR 126–27. He would not be able to do the same type of work he did before due to health issues including fatigue and dizziness. AR 127.

He didn't do much on a typical day other than ride his bike to the store five minutes away. AR 128. He rode his bike instead of walking because his legs would start giving out. AR 129. His legs had been feeling like that for four years. AR 129. In terms of chores, he tried to sweep and rake the backyard. AR 129. He could rake for one hour before sitting down due to fatigue. AR 136. He could do other tasks for no longer than an hour as well. AR 136. He stopped spending time with friends one year earlier because they stopped coming around. AR 129–30. He drank four beers per week. AR 130. Three years ago he was an alcoholic drinking a case a day once a week. AR 130–31. He slowed down his drinking because of his diabetes. AR 130.

He was able to buy his own vegetables and cook his own food. AR 132. Sometimes he went out to eat. AR 132. Other than riding his bike, there were no other hobbies or anything else he did on a regular basis other than rest and watch TV. AR 133. He managed his own medication. AR 134. He experienced seizures. AR 134. His last seizure was two to three months earlier. AR AR 134. He had a couple of seizures in 2018. AR 135. When he has a seizure he just passes out and has to go lay down. AR 135. He experienced dizziness daily or every other day. AR 136. He did not know what caused it specifically. AR 136. It occurred when sitting down and moving around, but was worse when he did activities. AR 137.

### B. Vocational Expert

The VE classified Plaintiff's past work as a warehouse worker at the medium exertional level as generally performed, but at the heavy exertional level as Plaintiff performed it. AR 139. The ALJ posed a hypothetical to the VE regarding an individual with Plaintiff's vocational profile who could perform work at the medium exertional level and could occasionally climb ladders, ropes and scaffolds, frequently climb ramps and stairs, and frequently stoop and crouch. AR 139. The VE testified that such an individual could perform Plaintiff's past work as generally performed (medium) but not as Plaintiff performed it (heavy). AR 140. The VE testified that such an individual could also perform other jobs existing in significant numbers in the national economy, dishwasher, janitor, laundry worker and courtesy clerk. AR 140. If the individual were limited to non-complex jobs requiring only simple routine tasks, the janitor role would not be available but the other identified jobs would be. AR 141. If the individual required two additional daily breaks of 20-minute duration, no work would be available. AR 142. If the individual was only able to sit, stand or walk for one hour at a time, no work would be available. AR 143. If the individual had consistent balancing difficulties when standing, dishwasher and laundry worker would still be available. AR 143. If dizziness while standing required the individual to sit and be off task 10 minutes per hour, no work would be available. AR 143–44.

### C. Consultative Examinations; Opinions; Prior Administrative Findings

Plaintiff previously filed four applications for SSI dated 2007, 2010, 2011, and 2015, all of which were denied and the last of which was consolidated with his current (2016) application after denial on reconsideration but prior to the administrative hearing.[2] AR 13, 147–57, 308–16, 393–94. Accordingly, the ALJ considered December 28, 2015 the operative date of his application. AR 14.

Non-examining state agency medical consultants Drs. Fast, Pancho and Linder reviewed Plaintiff's medical file regarding his physical conditions. All opined that Plaintiff could perform

---

[2] The ALJ found that Plaintiff had overcome the presumption of continuing non-disability as set forth in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998), due to change in age category, additional impairments and evidence of greater limitations reducing his residual functional capacity. AR 13–14.

medium work with no postural, manipulative, visual, communicative or environmental limitations. AR 171, 183–84, 198, 212.  Non-examining state agency consultants Drs. Garcia, Hill and Bongiovani reviewed Plaintiff's medical file regarding his mental conditions.  All identified moderate limitations in Plaintiff's ability to remember locations and work-like procedures and the ability to understand, remember and carry out detailed instructions, but no other limitations in mental functioning.  AR 184, 196, 200, 210.

Dr. Matthew performed a consultative psychiatric examination of Plaintiff on June 8, 2016. AR 584–87.  He noted Plaintiff's mental health complaints, but that Plaintiff had never been hospitalized, sought psychiatric intervention, received counseling or taken psychiatric medication. AR 584.  As to activities of daily living he noted that Plaintiff prepared simple meals, helped his mother with dishes, grocery shopped occasionally, occasionally visited with friends but otherwise had no hobbies.  AR 585.  He noted good eye contact, normal speech, slightly constricted but otherwise unremarkable thought content, okay mood and euthymic affect.  AR 585–86.  Plaintiff was oriented to month but not date, he knew the city by not why he was at the exam.  AR 586.  In terms of memory, he could not remember five digits forward or four digits forward; he could do three digits forward with difficulty but not backward.  AR 586.  Fund of knowledge was particularly lacking.  AR 586.  He could not calculate serial 7s, 3s, or 2s, and could add single digits but not double digits.  AR 586.  He could not spell music or world, could not recite the days of the week backward but could recite them forward with great difficulty.  AR 586.  His judgment was intact. AR 587.  Dr. Matthew diagnosed major depressive disorder, recurrent minor.  AR 587.  He opined that the problem was treatable but noted claimant had not sought treatment.  AR 587.  He opined that Plaintiff could not manage his own funds or perform detailed tasks due to cognitive impairment, but had no other mental functional limitations.  AR 587.  He noted it was unknown if there was any mental retardation involved.  AR 587.

Plaintiff underwent another consultative psychiatric examination on August 14, 2018 performed by Dr. Yadegar.  AR 929–33.  Dr. Yadegar noted that Plaintiff may have been under the influence of alcohol, that he did not answer some of the questions asked, did not appear genuine or transparent in answering questions, that he could not gather much information from the claimant

and that the results of his evaluation might not be completely accurate. AR 931–33. He diagnosed adjustment disorder not otherwise specified, but identified no mental functional limitations. AR 932–33.

Dr. Wagner performed a consultative internal medicine evaluation on August 14, 2018. AR 917. He opined that Plaintiff could perform medium work with some postural limitations. AR 921. In his narrative opinion he opined that Plaintiff's maximum standing/walking capacity was subject to "no limitations with normal breaks," and that his maximum sitting capacity was subject to "no limitations." AR 921. Dr. Wagner also completed a check-box opinion, the "Medical Source Statement of Ability to Do Work Related Activities." AR 922–27. In the check-box opinion he opined that Plaintiff could sit for two consecutive hours and stand/walk for one consecutive hour, but could sit, stand and walk for a total of eight hours each in an eight-hour day. AR 923.

**IV.     Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### VI. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 28, 2015. AR 16. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; peripheral neuropathy; hypertension; chronic kidney disease stage III; depression; and a history of borderline intellectual functioning. AR 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), with some postural limitations and only simple, routine tasks. AR 18. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform past relevant work as a warehouse worker as generally performed. AR 29. At step five, in the alternative, the ALJ found that Plaintiff could also perform other jobs existing in significant numbers in the national economy: dish washer, courtesy clerk and laundry worker. AR 30. Accordingly, the ALJ found that Plaintiff had not been under a disability since his application date of December 28, 2015. AR 30.

### VII. Issues Presented

Plaintiff contends that the physical and mental RFCs were not based on substantial evidence of record and that the ALJ did not provide clear and convincing reasons for rejecting his subjective symptomology.

#### A. RFC

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are

not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 2. **Analysis**

Plaintiff contends that the ALJ erred in failing to incorporate the physical limitations set forth in Dr. Wagner's consultative examining opinion, an opinion to which the ALJ accorded significant weight. Br. at 10. Plaintiff contends that Dr. Wagner's opinion reflects limitations that preclude medium work. Specifically, Plaintiff underscores that Dr. Wagner opined Plaintiff was limited to sitting two hours at a time, to standing one hour at a time, and to walking one hour at a time. *Id.* (citing AR 923).

The Court notes that Dr. Wagner did introduce ambiguity in his check-box opinion, opining that Plaintiff could sit/stand/walk for a total of eight hours each in an eight-hour day (i.e. 100% of the workday), which is inconsistent with his opinion that Plaintiff could perform each task no more than one to two hours consecutively. Defendant and the ALJ seemed resistant to acknowledge the ambiguity in the check-box opinion and suggested that the two findings therein could be logically

squared. Here, although there is ambiguity in the check-box opinion, that ambiguity did not trigger the ALJ's duty to obtain an updated opinion. The ambiguity was resolved by Dr. Wagner's separate narrative opinion. In that narrative opinion he clearly states that Plaintiff's maximum standing/walking capacity was subject to "no limitations with normal breaks," and that his maximum sitting capacity was subject to "no limitations." AR 921.

Plaintiff also underscores various medical records which he contends support a finding that he cannot stand or walk for longer than one consecutive hour:

> This limitation in standing and walking reflects the substantial evidence of record regarding the severity of Mr. Rodriguez's diabetic neuropathy with amputation and fatigue due to uncontrolled diabetes mellitus and hypotension (e.g., AR 514), including multiple ER visits for dizziness and hypotension (e.g., AR 466-468); Diabetic Management Examination findings of Sensory-Pinprick/Light touch: Left medial Foot (L-4); Left lateral foot (S1); Right medial foot L-4; Right lateral Foot (S1) and "Absent" Sensory-Pinprick/Light touch: Left dorsal foot (L-5) and Right dorsal foot (L-5); "Diminished" Monofilament of both the left and right foot; "Abnormal" Inspection of the Left and Right foot, right second toe was surgically absent; and on the plantar surface of the left and right foot with thick red callousing to the heel and ball of the foot. (AR 623). In fact, the severity of his neuropathy was further exemplified by the fact his treating provider advised Mr. Rodriguez not to walk barefoot or wear open-toed shoes (AR 626) and also put in an insurance request for "DM shoes" which are "specifically designed shoes intended to offer protection for diabetic feet and reduce the risk of skin breakdown, primarily in cases of poor circulation, neuropathy and foot deformities." This limitation in standing and walking is further supported by objective evidence of Mr. Rodriguez's multiple complaints of continued bilateral foot pain resulting increased prescription dosages of Neurontin (AR 609); treating records dated September 2017 documenting continued "diminished" left dorsalis pedis and "diminished" right dorsalis pedis; notations of a missing 2nd digit to his right foot; "diminished sensation" to the left medial foot, left dorsal foot, left lateral foot, right medial foot, right dorsal foot, right dorsal foot, and right lateral foot, and "diminished sensation" to the bilateral feet with monofilament. (AR 830).

Br. at 10–11. In sum, the records reflect dizziness, fatigue, amputated second right toe, diminished sensation and dorsalis pedis, callousing, foot pain and a prescription for DM shoes. *Id.* Although these records may suggest some difficulties in Plaintiff's ability to stand and walk, they do not necessarily translate into a functional limitation of standing and walking for a maximum of one consecutive hour. Plaintiff emphasizes that his treating physician told him not to walk barefoot and

prescribed him DM shoes. Notably, however, his physician did not instruct him to limit his standing and walking duration, nor did he submit an opinion stating that Plaintiff had any standing and walking limitations. The ALJ's physical RFC is supported by the uncontradicted opinions of the CE and the non-examining physicians who opined that Plaintiff could stand and walk six out of eight hours with normal breaks. AR 171, 183–84, 198, 212, 921.

As to Plaintiff's mental RFC, Plaintiff contends that the ALJ did not incorporate the limitations reflected in the psychiatric CEs' assessments. Both CEs noted that Plaintiff struggled with various aspects of the mental status examination, including serial 7s, 3s, and 2s, spelling simple words, reciting days of the week, orientation to date, object recall and fund of knowledge. Br. at 14–15. Notwithstanding Plaintiff's performance on the mental status examinations, Dr. Matthew opined that Plaintiff could perform simple tasks without limitation, and Dr. Yadegar opined that Plaintiff had no mental functioning limitations. AR 587, 933. The ALJ's RFC is consistent with those opinions.

Plaintiff also contends the ALJ had a duty to further develop the record because "both psychiatric CE's documented that there was an issue of 'mental retardation' or 'borderline intellectual functioning' that could not be assessed . . ." Br. at 15. Plaintiff contends that the ALJ ignored "these admonitions from both psychiatric CE's that their evaluations indicated a need for further intellectual functioning testing." *Id.* Plaintiff overstates the content of both opinions. Dr. Matthew stated it was "unknown if there is any mental retardation involved. I am not able to make that assumption at this time . . ." AR 587. He did not admonish that there was a need for further intellectual testing to confirm or disconfirm mental retardation. He did not indicate that the presence or absence of mental retardation might alter any aspect of his functional assessment, such as his opinion that Plaintiff could perform simple tasks. There was no ambiguity in Dr. Matthew's uncontradicted opinion.

Dr. Yadegar's opinion does not mention mental retardation or borderline intellectual functioning, nor does it contain an admonition that further intellectual functioning testing is necessary. Rather, it states that he could not gather much information from Plaintiff, that his evaluation might not be completely accurate, and that "additional information may be needed." AR 933.[3] The ALJ acknowledged those disclaimers. Accordingly, he accorded Dr. Yadegar's opinion only some weight finding that the record supported findings of severe mental impairments notwithstanding Dr. Yadegar's conclusion to the contrary. AR 28. The inconclusiveness of Dr. Yadegar's opinion did not trigger the ALJ's duty to further develop the record, and the ALJ did not make his own lay assessment of Plaintiff's intellectual limitations. Rather, the ALJ appropriately limited Plaintiff to simple and routine tasks consistent with the separate consultative examining opinion of Dr. Matthew (AR 587) and the opinions of four non-examining psychiatric consultants (AR 184, 196, 200, 210). *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (noting that the ALJ has a duty to further develop the record only where the evidence is ambiguous or inadequate for proper evaluation).

Finally, Plaintiff cites Dr. Yadegar's observation that Plaintiff could only complete a one-step command, a finding which Plaintiff contends would have precluded Plaintiff from performing the jobs identified by the VE (which have a reasoning level of two). Dr. Yadegar's observation that Plaintiff was only able to complete a one-step command was a factual finding under the

---

[3] Plaintiff suggests that his performance on the mental status examination is reflective of his work-preclusive intellectual deficits. However, based on Dr. Yadegar's notes, it appears equally likely that Plaintiff's poor performance was attributable to other factors. Dr. Yadegar noted that Plaintiff burped loudly during the interview, may have been under the influence of alcohol, inconsistently reported that he drank the night before but also reported that he doesn't drink anymore, would not complete the questionnaire, did not answer some of the questions asked, answered other questions with questions, and did not appear genuine or transparent. AR 929–933.

"concentration" portion of the intellectual functioning testing. Notwithstanding that finding, Dr. Yadegar's subsequent functional assessment reflects his opinion that "the claimant's ability to perform simple and repetitive tasks is unimpaired," and that "the claimant's ability to perform detailed and complex tasks is unimpaired." AR 932. It would be incongruous to elevate Dr. Yadegar's finding concerning one-step commands above his broader functional assessment which identified no limitations. And, as stated above, given that Dr. Yadegar's examination and opinion as a whole were inconclusive due to a lack of reliable and complete information, the ALJ appropriately relied on the other opinions of record. Thus the RFC was supported by substantial evidence.

### B. Plaintiff's Subjective Complaints

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5

### 2. **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 19. Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ did so, finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

The ALJ offered the following summary of his reasoning:

> Based on my review of the entire record and the hearing testimony, I conclude the claimant's subjective allegations of debilitating pain and physical/mental limitations precluding all work activity are not supported by the objective evidence. His testimony at the hearing was not persuasive or consistent with the objective evidence such as the generally benign physical and mental examination findings throughout the record. His activities of daily living are not consistent with one who suffers such severe limitations as to preclude all work activity. Finally, some of his alleged impairments have been responsive to treatment and do not impose a disabling degree of limitation. Although he testified that fatigue limits his ability to work, his stated activity level is consistent with medium exertional work.

13

AR 28. Plaintiff focuses on the above-quoted summary, largely disregarding the specifics the ALJ provided earlier in his decision that fleshed out his reasoning. The specifics the ALJ identified throughout the opinion were clearly identified and supported by citations to the record.

As quoted above, the ALJ found Plaintiff's testimony inconsistent with objective evidence and responsiveness to treatment. To that end, the ALJ noted that Plaintiff's diabetic peripheral neuropathy and essential hypertension were both controlled with medication and cited treatment records confirming the same. AR 19 (citing Ex. C3F, pp. 10-11, AR 561–62). Notwithstanding Plaintiff's testimony concerning recent seizures, the ALJ noted that none are documented in the objective medical record for the relevant period and Plaintiff never sought or received emergency treatment or neurological follow up. AR 16. As to Plaintiff's complaints of back pain, the ALJ noted December 2015 records reflect Plaintiff's complaints but no treatment was initiated. AR 16–17 (citing Ex. C3F, pp. 14-18, AR 565–69).

As to Plaintiff's complaints of dizziness, the ALJ noted December 2015 ER records which reflected low blood pressure, elevated creatinine, UTI and renal failure due to dehydration. AR 17 (citing Ex. C7F, pp. 27-32, AR 732–37). Plaintiff reported not eating or drinking much for three days, he was given a sandwich and a liter of fluid and was discharged in stable condition. *Id.* The ALJ also noted a March 2017 hospital admission record(s) which reflect complaints of lightheadedness, hallucinations, vomiting, bloody urine, elevated blood glucose, and elevated creatinine. AR 20 (citing Ex. CF7, pp. 8-23, AR 713–28). Those records also reflected he had not been taking his medication. *Id.* After administration of fluids and medication he was stabilized, discharged, and left the ER without assistance. *Id.*

As to Plaintiff's mental health issues including depression and anxiety, the ALJ noted that Plaintiff had never sought psychiatric intervention and had never been on medication. AR 24–25. The ALJ appropriately identified objective medical evidence undermining Plaintiff's subjective

complaints. Although subjective symptoms cannot be rejected on the sole ground that they are not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's expressed subjective symptomology. See, 20 C.F.R. § 404.1529(c)(2)). Plaintiff does not acknowledge the ALJ's discussion on these topics or dispute its accuracy.

Finally, the ALJ rejected Plaintiff's subjective complaints as inconstant with his activities of daily living. The only daily activities Plaintiff acknowledges are "watching TV or listening to radio," which Plaintiff contends are insufficient to justify rejecting his subjective complaints. Br. at 20. However, the ALJ identified substantially more activities than that which he derived from treatment notes, from Plaintiff's hearing testimony, from Plaintiff's reports to the CEs, from Plaintiff's function report, and from the third-party function report submitted by Ms. Goggin. These included: 1) that he testified he cleans his home, sweeps, rakes, prepares his own meals and manages his own medications; 2) that treatment notes reflected he was exercising four times per week by walking or bicycling; 3) that Ms. Goggin reported Plaintiff "sometimes forgets, but is able to tend to his personal needs, grooming, dressing, bathing, meal preparation, shops, and cares for his pets," 4) that Plaintiff's function report reflects that he goes out, handles money, shops, and is able to lift 50 pounds; 5) that he reported to Dr. Matthew that he is completely functional and independent with all activities of daily living and socializes with a small group of friends; and 6) that he reported to Dr. Wagner that he cooks, cleans, shops, performs ADLs without assistance, and walks or rides his bike for exercise. AR 19–24 (citing Ex. C10F, p. 16 (AR 789); Ex. C3F, p. 8 (AR 559); Ex. C5E (AR 369–76); Ex. C4E (AR 356–64); Ex. C4F, pp. 3–4 (AR 584–85); Ex. C12F, pp. 1–2 (AR 917–18)).

Plaintiff's activities of daily living were a clear and convincing reason for rejecting his subjective symptomology. *See Valentine v. Commissioner Social Sec. Admin.,* 574 F.3d 685, 693

(9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.*"*).

### VIII.  Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Arthur Rodriguez.

IT IS SO ORDERED.

Dated:   **March 26, 2021**                             **/s/ Gary S. Austin**
                                                                     UNITED STATES MAGISTRATE JUDGE